UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| ALISSA PRICE, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:10-cv-0040 |
| ) | |
| vs. ) | |
| ) | **PLAINTIFF'S MOTION FOR** |
| BROCK & SCOTT, PLLC and ) | **SUMMARY JUDGMENT** |
| CHANNEL GROUP, LLC, ) | |
| ) | |
| Defendants. ) | |

Now comes the Plaintiff, ALISSA PRICE ("Plaintiff"), by and through her attorney, M. LYNETTE HARTSELL, and respectfully requests this Honorable Court enter summary judgment in her favor and against Defendants BROCK & SCOTT, PLLC ("Brock & Scott") and CHANNEL GROUP, LLC ("Channel"), collectively referred to herein as "Defendants." In support, Plaintiff states as follows:

**I.  STATEMENT OF FACTS.**

On August 12, 2009, in effort to collect a debt, Defendants mailed to Plaintiff correspondence regarding an outstanding balance once allegedly due Chase Manhattan Bank and now alleged due Channel Group, LLC. *See* Exhibit 1 to Plaintiff's Complaint (Doc. 1-1), also attached as Exhibit 1 hereto. Defendants have admitted mailing said letter to Plaintiff. *See* Brock & Scott's Answers to Plaintiff's Request for Admission number 4, attached hereto as Exhibit 2.

Defendants' August 12, 2009 Correspondence (Exhibit 1 hereto) reads in part:

> This law firm has been retained by the above-referenced creditor to
> file a lawsuit against you immediately for the collection of the debt
> referenced above. However, you can make arrangements to satisfy
> the balance shown above by contacting our office. If you do not
> make payment upon this debt in an amount acceptable to our

1

> client, we will instruct the Sheriff of your county to serve you with a Court-issued summons at your home, your work, or wherever else you may be found by him. We will then apply to the Court for a Judgment against you, and if Judgment is granted, we may request that the Sheriff enforce the Judgment by levying an execution upon your property not exempt from Judgment.

On August 14, 2009 Plaintiff mailed to Defendants a letter reading, in part:

> This is a written request for validation of the debt referred to in your recent letter. The Federal Trade Commission, in 15 U.SC. 1692g, requires that debt collectors cease collection of a debt until verification of that debt is mailed to consumers.

*See* August 14, 2009 Correspondence, Exhibit 2 to Plaintiff's Complaint (Doc. 1-2), also attached as Exhibit 3 hereto. Defendants have admitted, in their Answers to Plaintiff's Requests for Admission, receiving said letter from Plaintiff. *See* Exhibit 2 hereto, answers 6 and 7. *See also* Channel's Answers to Plaintiff's Requests for Admission, attached hereto as Exhibit 4, answers 6 and 7.

Defendants have also admitted that they did not provide Plaintiff with any validation and/or verification of the alleged debt which they were attempting to collect from her prior to filing a lawsuit against Plaintiff in North Carolina state court in a further attempt to collect the alleged debt. *See* Exhibits 2 and 4 hereto, answers 8 and 9 in both.

On August 21, 2009, Defendants further admit that Brock & Scott caused a lawsuit to be filed against Plaintiff, on behalf of Channel, in the District Court of Durham County, North Carolina, case number 09 CVD 5540, in a further attempt to collect the alleged debt (hereinafter "the Durham County lawsuit"). *See* Exhibits 2 and 4 hereto, answer 9 in both. A copy of the Complaint filed in the Durham County lawsuit is also attached hereto as Exhibit 5.

2

## II. STATEMENT OF QUESTIONS PRESENTED

Did the language contained in Defendants' August 12, 2009 letter (Exhibit 1 hereto) overshadow and/or was it inconsistent with the disclosure of Plaintiff's right to dispute the alleged debt and/or to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(b)? Did Defendants fail to cease collection of the alleged debt until they had first obtained verification of the debt and mailed a copy of the same to Plaintiff, in further violation of 15 U.S.C. § 1692g(b)?

Plaintiff will demonstrate that no genuine issues exist as to any material facts alleged in her Complaint such that Plaintiff is entitled to a judgment against Defendants as a matter of law pursuant to Fed. R. Civ. P. 56(c)(2). "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

## III. THE FDCPA BROADLY PROHIBITS UNFAIR OR UNCONSCIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPPRESSES OR ABUSES ANY DEBTOR, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.

The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692, *et seq.* The FDCPA imposes civil liability upon any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA (1) declare certain rights to be provided to or claimed by debtors, (2) forbid deceitful and misleading practices, both generally and in a specific list of disapproved practices, and (3)

prohibit harassing and abusive tactics, both generally and in a specific list of disapproved practices.

In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

## IV.  THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

The FDCPA is a strict liability statute. *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.,* 233 F.3d 469 (7th Cir. 2000), holding that an unintentional misrepresentation of a debt collector's legal status violated the FDCPA; *Turner v. J.V.D.B. & Associates, Inc.,* 330 F.3d 991, 995 (7th Cir. 2003), holding that an unintentional misrepresentation that a debtor was obligated to pay a debt which had been discharged in bankruptcy violated the FDCPA; *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp.2d 643 (S.D. N.Y. 2006); and *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

4

## V. THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER DEBTORS.

The FDCPA is a remedial statute, and must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd.*, 472 F. Supp.2d 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. § 1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002); *see e.g. Plummer v. Gordon,* 193 F. Supp.2d 460, 463 (D.Conn. 2002); *Ross v. Commercial Fin. Servs.,* 31 F. Supp.2d 1077, 1079 (N.D. Ill. 1999); and *Harrison v. NBD, Inc.,* 968 F. Supp. 837 (E.D. N.Y. 1997).

## VI. THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED OR UNSOPHISTICATED CONSUMER STANDARD.

The FDCPA is to be interpreted in accordance with the "least sophisticated" or "unsophisticated" consumer standard. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985), adopting the "least sophisticated" consumer standard; *Graziano v. Harrison*, 950 F.2d 107 (3d Cir. 1991), noting that statutory notice under the FDCPA is to be interpreted from the perspective of the "least sophisticated debtor;" *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222 (9th Cir. 1988), holding that the provisions of the FDCPA are to be judged under the "least sophisticated debtor" standard; *Gammon v. GC Services Ltd. Partnership*, 27 F.3d 1254 (7th Cir. 1994), using the "unsophisticated consumer," rather than the "least sophisticated consumer." The least sophisticated consumer standard ensures the protection of all consumers, even those who are naive and trusting, against unlawful debt collection practices, while protecting debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices. *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993).

5

## VII. THE UNDISPUTED FACTS PARTICULAR TO THE INSTANT MATTER WARRANT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF ON THE CLAIMS RAISED IN HER COMPLAINT.

### A. Plaintiff is a "Consumer" as defined by the FDCPA.

"Consumer" is defined by the FDCPA as "any natural person obligated or alleged to be obligated to repay a debt." 15 U.S.C. § 1692a(3). Defendants admitted in their Answer to Plaintiff's Complaint that "Plaintiff is a 'consumer' as defined by 15 U.S.C. § 1692a(3)." *See* Doc. 9, page 6, par. 4. Defendants further admitted the same in their Answers to Plaintiff's Requests for Admissions. *See* Exhibits 2 and 4 hereto, answer 1 in both.

### B. Defendants are "Debt Collectors" as Defined by the FDCPA.

"Debt collectors" are defined by the FDCPA as "any person who uses any instrumentality of interstate commerce in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Notably, Brock & Scott admits in its Answer to Plaintiff's Complaint that it is a "debt collector" as defined by 15 U.S.C. § 1692a(6). *See* Doc. 9, page 6, par. 5. *See also* Brock & Scott's Answers to Plaintiff's Request for Admission number 3, attached hereto as Exhibit 2.

### C. Plaintiff's alleged obligation is a "Debt" as defined by the FDCPA.

"Debt" is defined by the FDCPA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). Brock & Scott admitted in its Answer to Plaintiff's Complaint that the subject obligation is a "debt" as defined by the FDCPA. *See* Doc. 9, page 6, par. 5. Defendants further admitted the

6

same in their Answers to Plaintiff's Requests for Admissions. *See* Exhibits 2 and 4 hereto, answer 2 in both.

> **D. Defendants violated 15 U.S.C. § 1692g, where their August 12, 2009 correspondence included overshadowing and contradictory language which was inconsistent with Plaintiff's statutorily afforded rights.**

Section 1692g of the FDCPA provides, in pertinent part:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt…and a copy of such verification…is mailed to the consumer by the debt collector…**Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt…**

15 U.S.C. § 1692g(b). (Emphasis added.)

Congress included debt validation provisions in the FDCPA in order to guarantee that consumers would receive adequate notice of their legal rights. *See* S.Rep. No. 382, 95th Cong., 1st Sess. 4, 8, *reprinted in* 1977 U.S. Code Cong. & Admin. News 1695, 1699, 1702. Thus, a debt collector does not comply with section 1692g "merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor." *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).

A notice of rights, when presented in conjunction with a contradictory demand, is not effectively communicated to the debtor. *See* e.g. *Francis v. Synder*, 389 F. Supp.2d 1034 (N.D. Ill. 2005), holding that a letter to a consumer noting that collection efforts would be pursued unless the outstanding balance was paid, while at the same time allowing the consumer 30 days to dispute the validity of the debt, presented two statements that an unsophisticated consumer

7

could reasonably find contradictory or confusing and thus violative of § 1692g. A collection letter, even should it track the statutory language of the FDCPA, "nonetheless violates the Act if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty." *Meselsohn v. Lerman*, 485 F. Supp.2d 215 (E.D. N.Y. 2007). Language is "overshadowing or contradictory if it would make the least sophisticated consumer uncertain as to her rights." *Russell v. Equifax A.R.S.,* 74 F. 3d at 30 (2d Cir. 1996)*; Savino v. Computer Credit, Inc.,* 164 F. 3d 81 (2d Cir. 1988). "Thus, a debt collector violates the Act if its communication is 'reasonably susceptible to an inaccurate reading' of the required message." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159 (2d Cir. 2001).

> **1. The language included in Defendants' August 12, 2009 letter overshadows and conflicts with Plaintiff's verification rights because the least sophisticated debtor could take from Defendants' correspondence that any course of action other than payment, or a promise to make payment, would result in a lawsuit.**

Section 1692g is not merely satisfied by the inclusion of the required debt validation notice. The FDCPA requires that the same "must be conveyed effectively to the debtor." *Swanson v. Southern Oregon Credit Service, Inc*., 869 F.2d 1222 (9th Cir. 1988). '[T]o be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Id*. at 1225; *see also Ost v. Collection Bureau, Inc.,* 493 F. Supp. 701 (D. N.D. 1980), holding that a communication must not be designed to "evade the spirit of the notice statute, and mislead the debtor into disregarding the notice." Internal contradiction present within a validation notice need not be "threatening" to violate the FDCPA. *Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996). A notice is overshadowing or contradictory if the least sophisticated consumer would have been confused as to the consumer's rights. *Id*.

8

The language of Defendants' August 12, 2009 letter represents an attempt to evade the spirit of the notice statute and mislead the debtor into disregarding the required debt validation notice. The least sophisticated consumer, having reviewed said letter, could reasonably believe, notwithstanding any validation notice, that if Defendants did not receive payment in an acceptable amount, that Plaintiff would forego her opportunity to avoid a lawsuit.

Congress designed § 1692g to provide alleged debtors with 30 days to question and respond to the initial communication of a collection agency. Without more, there exists a reasonable probability that the least sophisticated debtor, when faced with (1) a demand for payment; (2) a threat that a law firm has been retained "to file a lawsuit against you immediately;" (3) a warning that a Sheriff would serve the least sophisticated consumer debtor with a summons at her home or workplace; and (4) an ominous admonition that the judgment to be entered could be enforced by a Sheriff levying an execution upon the consumer's property, would be induced to overlook her statutory right to dispute the debt within 30 days.

The reasonable probability that the least sophisticated consumer, having reviewed Defendants' August 12, 2009 letter, would be induced to overlook her statutory right to dispute the debt to avoid the threat of a lawsuit, is substantiated by the simple fact that such a probability, in the instant matter, actually occurred. Having received Plaintiff's August 14, 2009 correspondence disputing the alleged debt, Defendants freely admit that they chose to file a lawsuit against Plaintiff in an effort to collect the debt instead of providing her with the validation to which she was entitled by law.

Stated otherwise, Defendants, through their August 12, 2009 letter, presented Plaintiff with mutually exclusive opportunities: (1) take 30 days from her receipt of Defendants' letter to dispute the validity of the subject debt, but if she did so, (2) the opportunity to avoid the lawsuit

9

threatened by Defendants could expire. The least sophisticated debtor, and quite probably even the average debtor, having reviewed Defendants' August 12, 2009 letter, could be led to the conclusion that she must ignore her right to take 30 days to verify the alleged debt and act immediately or she could subject herself to a lawsuit, which is exactly what happened here.

The demand for payment and threat of an immediate lawsuit presented at the top of Defendants' August 12, 2009 letter overshadows and conflicts with the validation notice found at the bottom of the letter. *See* e.g. *Larsen v. JBC Legal Group, P.C.*, 533 F. Supp.3d 290 (E.D. N.Y. 2008), holding that a threat that litigation may be commenced within the 30-day period implies that the consumer has less than the statutorily-required time period provided for under 15 U.S.C. § 1692g(a)(3) to dispute the debt, and accordingly overshadows and conflicts with any proper validation notice.[1] Importantly, "a debt collector violates the Act if its communication is 'reasonably susceptible to an inaccurate reading' of the required message." *DeSantis v. Computer Credit, Inc.,* 269 F.3d 159 (2d Cir. 2001).

> **2. Nothing in Defendants' August 12, 2009 letter precludes the possibility that even if Plaintiff submitted a written dispute, Defendants would still consider the debt valid and collectible.**

Another fundamental problem particular to Defendants' August 12, 2009 letter is that the language utilized is itself ambiguous as to whether submitting a written dispute necessarily prevents Defendants from assuming the validity of the subject debt, and proceeding with according collection efforts. The only clear message received by the least sophisticated

---

[1] The Ninth Circuit Court of Appeals has in fact found that language much more discreet than that utilized by Defendant in the instant matter violated 15 U.S.C. § 1692g. In *Swanson v. Southern Oregon Credit Service, Inc.*, the Ninth Circuit, in describing the language employed by a debt collector's letter as "misleading in both form and content," stated: "The prominence and message of the 'master file' and 'most valuable asset' language, lead the least sophisticated debtor, and quite probably even the average debtor, only to one conclusion: he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the 'master file' of his local collection agency and will, accordingly, lose his 'most valuable asset,' his good credit rating." *Swanson v. Southern Oregon Credit Service, Inc*., 869 F.2d 1222 (9th Cir. 1988).

consumer is that the sole way to prevent Defendants from assuming the debt to be valid and proceeding with collection efforts, is to make a payment in an acceptable amount.

Nothing in Defendants' August 12, 2009 letter precludes the possibility that even if Plaintiff submitted a written dispute, Defendants would still consider the debt valid and collectible. While the latter section of Defendants' letter could convey to a consumer that if she disputes her debt within 30 days, the debt will no longer be assumed valid, such notion is thrown into significant doubt by Defendants' unequivocal admonition that "[i]f you do not make payment upon this debt in an amount acceptable to our client, we will instruct the sheriff of your county to serve you with a Court-issued summons at your home, your work, or wherever else you may be found by him." *See* e.g. *Gaudette v. GC Servs. Ltd. Pshp.*, 1999 U.S. Dist. LEXIS 21532 (D. Conn. 1999), holding that a statement in a validation notice that the plaintiff's debt was legally binding, and collection activity was lawful, implied that the legal validity of the debt had been decided and therefore overshadowed and obscured notice by deterring the plaintiff from disputing the debt. The confusion caused by the ambiguity of Defendants' correspondence renders them liable for a violation of the FDCPA.

> **3. Defendants' contention that their August 12, 2009 letter substantially complies with certain Federal court opinions is unavailing, where circuit courts have warned that debt collectors should depart from suggested language at their own risk.**

Defendants, through their Motion to Dismiss, assert that "[t]he letter, far from 'overshadow[ing]' the Plaintiff's rights, is entirely consistent with them…Commencing civil litigation is not inconsistent with, or overshadowing of, the Plaintiff's rights under [§ 1692g]." *See* Doc. 9 at p. 4. In support of their contention, Defendants cite one opinion from a federal court in effort to demonstrate that their actions were consistent with § 1692g, *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997).

11

Defendants quote three sentences, taken **out of context** from the *Bartlett* case, in order to support their contention that the statute does not forbid filing a civil lawsuit within the 30-day period after the debtor receives the notice of her validation rights. *See* Defendants' Motion to Dismiss, Doc. 9 at p. 4-5. What Defendants fail to mention to this Court is that the Seventh Circuit Court of Appeals, in response to an argument similar to that which Defendants present to this Court, drafted a suggested "safe-harbor" letter that debt collectors in Defendants' position could use to avoid liability on the very issue before this Court.

The Seventh Circuit, in *Bartlett v. Heibl*, noted that a debt collector need not draft correspondence that expressly contradicts statutory notice requirements to violate the FDCPA, in order to be in violation of the statute, but rather only that a defendant send a communication which is difficult to understand. *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997). In particular, the Seventh Circuit likened violative communication to "static or cross-talk [that] can make a telephone communication hard to understand even though the message is not being contradicted in any way." *Id.* at 500. The Seventh Circuit additionally noted that "[t]he cases that find the statute violated generally involve neither logical inconsistencies (that is, denials of the consumer rights that the dunning letter is required to disclose) nor the kind of literal 'overshadowing' involved in a fine-print, or faint-print, or confusing-typeface case." *Id.* Continuing, the Seventh Circuit opined: "It would be better if the courts just said that the unsophisticated consumer is to be protected against confusion, whatever form it takes. A contradiction is just one means of inducing confusion; 'overshadowing' is just another; and the most common is a third, the failure to explain an *apparent* though not actual contradiction…" *Id.* at 501. (Emphasis in original.)

12

Of great implication, the Seventh Circuit, in response to an argument mimicking that which Defendants present to this Court, drafted a suggested "safe-harbor" letter that debt collectors could use to avoid liability particular to the very issues before this Court:

> Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it. If you don't dispute it within that period, I'll assume that it's valid. If you do dispute it--by notifying me in writing to that effect--I will, as required by the law, obtain and mail to you proof of the debt. And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor…I will furnish you with that information too.
>
> The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. **If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts (through litigation or otherwise) to collect the debt until I mail the requested information to you.**

*Bartlett v. Heibl*, 128 F. 3d 497, 501-502 (7th Cir. 1997). (Emphasis added.)

Clearly, Defendant's August 12, 2009 letter reads nothing like the suggested language provided by the Seventh Circuit in *Bartlett*. The manner in which Defendants' correspondence is drafted confers upon the least sophisticated consumer the very opposite effect intended by the Seventh Circuit's suggested notice as outlined in *Bartlett*. Described by the Seventh Circuit as "legal gibberish," Defendant's letter creates the very "static or cross-talk" that makes the communication difficult to understand. Compellingly, the Seventh Circuit explicitly concluded its opinion in *Bartlett* by warning: "We cannot require debt collectors to use 'our' form. But of course if they depart from it, they do so at their risk." *Id.* at 502.

Similarly, the Second Circuit, in *Savino v. Computer Credit, Inc.,* stated that "when determining whether Section 1692g has been violated, courts use 'an objective standard,

13

measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector.'" *Savino v. Computer Credit, Inc.,* 164 F.3d 81 (2d Cir. 1998), quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir. 1996). "[T]he juxtaposition of two inconsistent statements renders the notice invalid under § 1692g." *Id*. A debt collection notice is overshadowing or contradictory if it fails to convey the validation information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights. *Id*.

Similar to the Seventh Circuit in *Bartlett v. Heibl*, the Second Circuit suggested language to be used by debt collectors to avoid liability for claims identical to those before this Court:

> Our demand for immediate payment does not eliminate your right to dispute this debt within thirty days of receipt of this notice. **If you choose to do so, we are required by law to cease our collection efforts until we have mailed that information to you.** Your rights are described on the reverse side of this notice.

*Savino v. Computer Credit, Inc.,* 164 F.3d at 86. (Emphasis added.) Defendants, however, included language in their August 12, 2009 letter bestowing upon Plaintiff the exact opposite effect of that suggested by the Second Circuit.

Like Defendants' failure to utilize the language suggested by the Seventh Circuit, Defendants, in drafting and sending their August 12, 2009 letter to Plaintiff, departed from the "safe-harbor" notice suggested by the Second Circuit. As was unequivocally detailed by the Seventh and Second Circuits, Defendants did so at their own risk.

### E. Defendants violated 15 U.S.C. § 1692g where they failed to provide Plaintiff with verification of the alleged debt, as she requested.

The FDCPA "imposes two specific verification requirements on debt collectors: obtaining verification from the creditor and mailing that verification to the debtor. 15 U.S.C. § 1692g(b)." *Dunham v. Portfolio Recovery Associates*, *LLC*, 2009 WL 3784236 (E.D. Ark. 2009). The verification requirements imposed are designed to prevent debt collectors from

14

"dunning the wrong person or attempting to collect debts which the consumer has already paid." *Chaudhry v. Gallerizzo,* 174 F.3d 394, 406 (4th Cir. 1999).

Courts have specifically held that filing a collection lawsuit against an alleged debtor, prior to providing the consumer with verification of the debt, where the consumer has timely requested that verification, is a violation of 15 U.S.C. § 1692g.

In *Anderson v. Frederick J. Hanna & Associates*, 361 F. Supp.2d 1379 (N.D. Ga. 2005), the court held that "the law is clear that once an initial communication is made and the debtor requests verification, the debt collector must provide the verification before resuming collection efforts." *Id.* at 1383. To the extent Defendants are claiming that the filing of the Guilford County lawsuit against Plaintiff was not a "collection activity" as that term is used in 15 U.S.C. §1692g(b), the *Anderson* court found that argument to be "**patently frivolous**," further stating that "[n]othing…suggests that a lawsuit does not constitute an attempt to collect a debt, which **it obviously does**." *Id.* (Emphasis added.)

In *Anderson*, the defendant mailed the plaintiff a collection notice which contained the language required by 15 U.S.C. §1692g, on February 4, 2004. As did the Plaintiff in this case, the plaintiff in *Anderson* mailed a letter back to the debt collector defendant disputing the debt, on February 10, 2004. Arguably, the defendant in *Anderson* did more to attempt to comply with § 1692g than did the Defendants in this case. The defendant in *Anderson* mailed another letter to the plaintiff which stated, "Your account was opened May 2001. You have made purchases and payments for two (2) years. Therefore, we don't know if you are disputing whether you have ever had an account or if you disagree with the balance. Please advise if you want to settle." *Id.* at 1381. On February 27, 2004, the defendant law firm filed a lawsuit against the consumer plaintiff in a further attempt to collect the debt.

15

Furthermore, the United States Supreme Court has held that the FDCPA "applies to the litigating activities of lawyers." *Heintz v. Jenkins*, 514 U.S. 291, 294, 115 S.Ct. 1489, 1490 (1995). *See also McDaniel v. South & Associates, P.C.*, 325 F. Supp.2d 1210 (D. Kansas 2004), holding that the filing of a judicial foreclosure proceeding against a consumer debtor amounts to a "debt collection activity" under the FDCPA (the court granted summary judgment in favor of the plaintiffs because the defendant filed a foreclosure lawsuit without first verifying the debt, after one of the plaintiffs properly disputed the debt within the 30-day dispute period).

Plaintiff's validation request letter was dated August 14, 2009. *See* Exhibit 3. Defendants filed the civil suit against Plaintiff on August 21, 2009 without first provided Plaintiff with the requested validation. *See* Exhibit 5. All of these actions clearly took place within the statutory 30-day period proscribed in 15 U.S.C. § 1692g(a). In a recent case which is directly on point, *Ellis v. Solomon and Solomon, P.C.,* 591 F.3d 130 (2d Cir. 2010), the court addressed the very issue at play here. That is, does the filing of a civil lawsuit during the validation period overshadow the consumer's right to request validation of the debt? The Second Circuit held that it does.

In *Ellis*, the debt collector sent an initial dunning letter to the consumer and within two weeks thereafter, filed a civil suit to collect on the underlying debt. *Id.* at 131-32. Identical to the situation herein, the debt collector in *Ellis* did not tell the consumer what effect the threatened filing of a lawsuit would have on her validation rights. *Id*. at 133. The consumer filed an FDCPA action, alleging overshadowing, among other things. *Id.* Citing to an earlier Second Circuit decision, *Goldman v. Cohen*, 445 F. 3d 152 (2d Cir. 2006), the court stated:

> [I]n cases where debt collectors send debtors a validation notice either along with a summons and complaint or shortly thereafter… [there is a] risk that some debtors will become confused." *Goldman*, 445 F.3d at 157. Seeking to avoid such confusion, the

16

> [*Goldman*] Court explained that "**it is imperative that a debt collector (1) 'make clear that the advice contained in the § 1692g validation notice in no way alters the debtor's rights or obligations with respect to the lawsuit'** and (2) 'emphasize that courts set different deadlines for filings.' *Id.*

*Id*. at 136 (2d Cir. 2010). (Emphasis added.)

The *Ellis* court held, very specifically, that the validation notice is overshadowed where a debt collector serves a consumer with process initiating a lawsuit during the validation period, without clarifying that commencement of the lawsuit has no effect on the information conveyed in the validation notice. *Id.* The Court went on to advise debt collectors on how to avoid such a § 1692g violation in the future:

> Defendants did not have to serve [Plaintiff] during the validation period; they could have waited until the validation period expired…**If the debt collector chooses not to wait until the end of the validation period to commence debt collection litigation, an explanation of the lawsuit's impact – or more accurately, lack of impact – on the disclosures made in the validation notice must be provided.** This explanation should be set forth in either the validation notice itself, or in a notice provided with the summons and complaint…Clarifying that commencement of a lawsuit does not trump the validation notice will come at little or no cost to debt collectors and will ensure that the consumer rights secured under the FDCPA are not overshadowed or contradicted.

*Id.* at 136-37. (Emphasis added.)

The Defendants herein did not advise Plaintiff in any manner that the lawsuit had no effect on her validation rights. The least sophisticated consumer could easily be confused by receiving a validation notice and service of a lawsuit within just days of each other. *Id.* at 136. The *Ellis* Court found it difficult to discern what tactical advantage was gained by the debt collector in filing suit during the validation period and cautioned that although filing suit is permitted, "in doing so, a debt collector must not violate §1692g(b)'s proscription of collection activities that 'overshadow or… are inconsistent with' the validation notice." *Id.* at 136-37.

17

Simply put, it is not the filing of the lawsuit which is the prohibited activity but rather the threat of doing so in the same letter which contained a recitation of Plaintiff's right to request validation of the debt, etc.

Defendants could have waited until the validation period had expired. However, in choosing to file a lawsuit only days after sending a validation notice, without advising Plaintiff that the lawsuit would have no effect on her validation rights, and conversely that requesting validation would have no effect on the lawsuit, Defendants violated 15 U.S.C. § 1692g(b).

**F. Channel is liable under the FDCPA for the actions of its attorneys and authorized agents, Brock & Scott.**

As alleged in Plaintiff's Complaint, the actions which Plaintiff claims constitute violations of the FDCPA were undertaken by Brock & Scott on behalf of Channel. However, simply because an employee of Channel did not, for example, send the August 12, 2009 letter at issue to Plaintiff does not mean that Channel escapes liability in this matter. Several courts have held debt collectors vicariously liable for the actions of their debt collection attorneys.

In *Martinez v. Albuquerque Collection Services, Inc.*, 867 F.Supp. 1495 (D. N.M. 1994), the court examined cases from United States district courts throughout the country in reaching the following conclusion:

> **Debt collectors employing attorneys** or other agents to carry out debt collection practices **that violate the FDCPA are vicariously liable for their agent's conduct.** 17 Am.Jur.2d *Consumer Protection* § 200 (1990) (debt collector liable for its attorney's conduct because otherwise collector could evade the FDCPA by hiring attorney to do what it could not do); *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994) (after repeal of attorney exemption, debt collector still liable under the FDCPA for its attorney's conduct; otherwise the venue provision superfluous for the first nine years of its operation); *Kimber v. Fed. Fin. Corp.,* 668 F.Supp. 1480, 1486 (M.D.Ala.1987) (while attorney exemption intact, debt collector liable under the FDCPA for its attorney's violations); *West v. Costen,* 558 F.Supp. 564, 573

18

> (W.D.Vir.1983) (creditor corporation liable under the FDCPA for
> the acts of its independent collection agents).

As Plaintiff has demonstrated above that Brock & Scott violated section 1692g of the FDCPA in two separate ways in its collection of the alleged debt from Plaintiff, Channel is vicariously liable for those violations.

## VIII. CONCLUSION

The queries presented in the Statement of Questions Presented above can only be answered in the affirmative. The language contained in Defendants' August 12, 2009 letter overshadowed and was inconsistent with the disclosure of Plaintiff's right to dispute the alleged debt and/or to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(b). Defendants also failed to cease collection of the alleged debt until they had first obtained verification of the debt and mailed a copy of the same to Plaintiff, in further violation of 15 U.S.C. § 1692g(b). Finally, in choosing to file a lawsuit only days after sending a validation notice, without advising Plaintiff that the lawsuit would have no effect on her validation rights, and conversely that requesting validation would have no effect on the lawsuit, Defendants also violated 15 U.S.C. § 1692g(b).

As such, Plaintiff has demonstrated that no genuine issues exist as to any material facts alleged in her Complaint and she is entitled to a judgment against Defendants as a matter of law pursuant to Fed. R. Civ. P. 56(c)(2).

WHEREFORE, Plaintiff, ALISSA PRICE, respectfully requests this Honorable Court enter an order as follows:

> 1. Granting summary judgment in favor of Plaintiff and against both Defendants on Plaintiff's Complaint;
>
> 2. Entering judgment against both Defendants in the amount of $1,000 statutory damages, as set forth in 15 U.S.C. § 1692k(a)(2)(A);

3. Granting Plaintiff leave to file her Petition for Attorneys' Fees and Costs within 30 days of this Court's order, pursuant to 15 U.S.C. § 1692k(a)(3);

4. Vacating the trial date currently scheduled in this matter for April 4, 2011 at 9:30 a.m. (April Calendar Term); and

5. Awarding such other and further relief as this Court deems appropriate.

Respectfully Submitted,                      Respectfully Submitted,

/s/ M. Lynette Hartsell                      /s/ David B. Levin
M. Lynette Hartsell (9845)                   David B. Levin (special appearance)
Luxenburg & Levin, LLC                       Luxenburg & Levin, LLC
Attorney for Plaintiff                       Attorney for Plaintiff
1010 Lakeview Drive                          23240 Chagrin Blvd., Suite 601
Cedar Grove, NC 27231                        Beachwood, OH 44122
(888) 493-0770, ext. 305 (phone)             (888) 493-0770, ext. 302 (phone)
(866) 551-7791 (facsimile)                   (866) 551-7791 (facsimile)
Lynette@LuxenburgLevin.com                   David@LuxenburgLevin.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 16, 2010, a copy of the foregoing Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ M. Lynette Hartsell
M. Lynette Hartsell (9845)
Attorney for Plaintiff
1010 Lakeview Drive
Cedar Grove, NC 27231
(888) 493-0770, ext. 305 (phone)
(866) 551-7791 (facsimile)
Lynette@LuxenburgLevin.com