# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
# DURHAM DIVISION

| | |
|---|---|
| ALISSA PRICE, | ) |
| *Plaintiff*, | ) Docket No. 1:10-CV-0040 |
| *versus* | ) |
| BROCK & SCOTT, PLLC and CHANNEL GROUP, LLC, | ) |
| *Defendants*. | ) |

## DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COME NOW the Defendants, by and through their undersigned counsel, and by way of response to the Plaintiff's Motion for Summary Judgment, and further by way of support for Defendants' Motion for Summary Judgment, propound their Brief as follows:

## THE AUGUST 12, 2009 DEMAND LETTER DOES NOT CONTAIN ANY LANGUAGE THAT EITHER OVERSHADOWS OR IS INCONSISTENT WITH THE PLAINTIFF'S RIGHTS

Defendants first argue that the August 12, 2009 demand letter sent by Brock & Scott, PLLC, as counsel for Channel Group, LLC, to the Plaintiff, is not overshadowing or inconsistent with the Plaintiff's rights to dispute the debt and to request the name and address of the original creditor. Plaintiff's testimony as to the "overshadowing and inconsistent effect" of the demand letter is as follows:

> "Q: Okay. Now, the next document I'm going to show you, which I'll mark for identification as Exhibit 3, is a one-page document.

(Deposition Exhibit No. 3 was marked for identification.)
BY MR. JACKSON:
Q: I'll ask you if that is the letter referred to in paragraph 7 of the Amended Complaint.
A: That is correct.
Q: Okay. You mentioned earlier that you believed that the letter – let me see if I've got this right – you believe that the letter overshadowed and/or was inconsistent with your right to dispute the debt or to request the name and address of the original creditor?
A: That's what it says.
Q: Is that what you say?
A: Yes.
Q: Okay. Can you please point to the section of that letter that is overshadowing, if any, as to your right to dispute the debt or request the name and address of the original creditor?
A: The entire first paragraph overshadows the fact that the second paragraph mentions that one could verify the debt within 30 days, which was not accurate, given my experience.
Q: Is there any particular statement in the – one, two, three, four, five, six, seven – eight lines of paragraph 1 that is overshadowing?
A: We are filing a lawsuit against you immediately for the collection of the debt reinforced [*sic*.] above. That's the first – the latter part of the first sentence, without mentioning verification of debt or notification, which comes at the bottom.
Q: Okay. Is it your contention that the letter is overshadowing because that statement in the first – first sentence appears before the statement regarding the defendant's right to verify the indebtedness?
A: That is one interpretation, and that is my interpretation. When I received this letter, my interpretation was, I was being sued, and that in the latter paragraph, which didn't turn out to be accurate, I was not able to verify my debt before I, in fact, was served with civil summons.
Q: Okay. Is there anything else in this letter that's overshadowing?
A: Define "overshadowing."
Q: As you used in paragraph 13(b), "Participating in collection activities which overshadowed and/or which were inconsistent with Plaintiff's right to dispute the debt or to request the name and address of the original creditor."
A: What I've stated already is – is accurate.
Q: Okay. Is there anything else?
A: No.
Q: Okay. Is there any part of that letter that you can point to that is inconsistent with your right to dispute the debt or to request the name and address of the original creditor?
A: The actions thereafter were inconsistent with what the letter had stated.
Q: Okay. What actions in particular?
A: The actions of me being served a civil summons prior to verification of debt."

(Deposition of Alissa Jo Price, p.17, line 17 - p. 20, line 7).

Plaintiff's testimony excerpted above shows that her claim for relief upon the alleged violation of 15 U.S.C. §1692g rests upon the claim that the August 12, 2009 demand letter "overshadowed" Plaintiff's rights by providing the disclosure mandated by 15 U.S.C. § 1692g below the demand for repayment of the debt, rather than above it.

In *McCormick v. Wells Fargo Bank*, the District Court for the Southern District of West Virginia, relying upon the decisions of the Court of Appeals for the Fourth Circuit in both *Miller v. Payco-General American Credits, Inc.* and *U.S. v. National Financial Services, Inc.*, held that

> "[i]n essence, the heart of the problem is that the Plaintiffs are not being made aware that the collection process will temporarily stop if they exercise their section 1692g(a) rights for verification. However, the statute is very clear about what is required in the written notice. 15 U.S.C. §1692g(a). Alerting consumers of their right to stop the collection process is not one of the five enumerated rights Congress has required debt collectors to include in the dunning letters." *McCormick*, 640 F. Supp. 2d 795, at 799-800 (S.D. W. Va. 2009).

By way of contrast, the demand letter in *Miller*, which was found by the Court to have "overshadowed" the debtor's rights, was as follows:

> "Across the top of the one page form is the title, "DEMAND FOR PAYMENT," in large, red, boldface type. After the title follows information as to the creditor, the amount owed, and Payco's address. In the middle of the page, again in large, red, boldface type, is the statement, "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT OF YOUR DEBT." That statement is followed by these sentences in black boldface type: YOUR SERIOUSLY PAST DUE ACCOUNT HAS BEEN GIVEN TO US FOR IMMEDIATE ACTION. YOU HAVE HAD AMPLE TIME TO PAY YOUR DEBT, BUT YOU HAVE NOT. IF THERE IS A VALID REASON, PHONE US AT [telephone number] TODAY. IF NOT, PAY US–NOW. The bottom third of the document is almost completely filled by the single word, "NOW," in white letters nearly two inches tall against a red background. At the very bottom of the page, in the smallest type to appear on the form (letters one-eighth of an inch high), is the statement, "NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION." The notice is printed in white against a red background. On the reverse of the

document are four paragraphs printed in gray ink. The last three paragraphs
contain the validation notice-- that is, statements required by the [FDCPA] that
inform the consumer how to obtain verification of the debt." *Miller,* 943 F.2d
482, at 483 (4th Cir. 1991).

The Court in *Miller* expressly found that Payco "need not cease its collection efforts in order to abide by the statute, it simply needs to convey effectively the validation notice without contradicting it." *Id.* at 484.

The Plaintiff here attempts to read the FDCPA in precisely the manner that was rejected by the United States Court of Appeals for the Seventh Circuit in *Bartlett v. Heibl,* by importing into the Act a requirement that the debt collector undertake no collection activity whatsoever during the thirty-day period during which the consumer may request validation of the debt. The Plaintiff's argument is that, because the demand letter at issue in this civil action made reference to the creditor's intention to pursue a judicial remedy, it necessarily overshadowed the debtor's 30-day 'validation period'. As the Court in *Bartlett* held:

> "[Counsel] takes the extreme, indeed the absurd, position – one that he
> acknowledged to us at argument, with a certain lawyerly relish, creates an
> anomaly in the statutory design – that the debt collector cannot in any way, shape,
> or form allude to his right to bring a lawsuit within thirty days [of the debtor's
> receipt of the section 1692g disclosures required for initial communications].
> That enforced silence would be fine if the statute forbade suing so soon. **But it
> does not**. The debt collector is perfectly free to sue within thirty days ... In effect
> the plaintiff is arguing that if the debt collector wants to sue within the first thirty
> days he must do so without advance warning. How this compelled surprise could
> be thought either required by the statute, however imaginatively elaborated with
> the aid of the concept of "overshadowing," or helpful to the statute's intended
> beneficiaries, eludes us." *Bartlett,* 128 F.3d 497, at 501 (7th Cir. 1997)(emphasis
> added).

The Plaintiff argues in support of her Motion for Summary Judgment that the Plaintiff, as well as other, hypothetical least-sophisticated consumers, would be led to decline to exercise the

right to dispute the validity of the debt rather than "forego her opportunity to avoid a lawsuit." Plaintiff's argument is simply nonsensical: the Plaintiff's "opportunity to avoid a lawsuit" ended when she first defaulted upon the account being collected upon, because at all times thereafter the then-present creditor has the right to initiate judicial proceedings to determine, confirm, and enforce its rights, with only two exceptions: the time period between the debtor's demand for validation of the debt and the response thereto (with respect only to creditors other than the initial creditor), and any time during the pendency of a stay pursuant to 11 U.S.C. §362.

Plaintiff also argues that the August 12, 2009 is "ambiguous as to whether submitting a written dispute necessarily prevents Defendants from assuming the validity of the subject debt, and proceeding with according collection efforts." Plaintiff cites no statutory provision of the FDCPA which prevents a debt collector from assuming the validity of the debt it seeks to collect, and the only case law cited to advance the proposition, *Gaudette v. GC Servs. Ltd. Pshp.*, 1999 U.S. Dist. LEXIS 21532 (D. Conn. 1999), stands only for the proposition that a statement in the 'validation notice' required by section 1692g of the Act, to the effect that the debt was "legally binding," constituted an implication that the validity of that debt had already been determined and by so doing overshadowed the debtor's right to request such validation. Plaintiff cites no language in the August 12, 2009 demand letter at issue that raises a similar implication in this action.

## THE DEFENDANTS DID NOT UNDERTAKE ANY COLLECTION ACTIVITY AFTER THEIR RECEIPT OF THE PLAINTIFF'S DEMAND FOR VALIDATION

Plaintiff's remaining claim is that the Defendants violated 15 U.S.C. §1692g by failing to cease collection efforts upon the subject account after the Plaintiff requested validation, but prior

to producing such validation to the Plaintiff. Plaintiff gave the following deposition testimony regarding her request for validation:

> "Q: Show you a document marked for identification purposes as Exhibit No. 4 and ask you if you've ever had a chance to see that document before.
> A: Yes.
> Q: Can you please tell us what that document is.
> A: It is a request for validation of the debt referred to in that letter.
> Q: Okay. Referred to in Exhibit 3?
> A: In doc – Exhibit No. 3, Deposition Exhibit 3.
> Q: Okay. As used in Deposition Exhibit 4 – well, first, let me ask, is that your signature?
> A: It is.
> Q: Okay. As used in Deposition Exhibit No. 4, what is the verification that you are requesting?
> A: I am requesting validation of the debt referred to in your recent letter, and I cite the section of the Federal Trade Commission 15 U.S.C. Section 1692g requires that debt collectors case [*sic.*]collection of debt until verification of that debt is mailed to consumers.
> Q: Okay.
> A: "Please provide this information in writing via U.S. Mail at the address listed above."
>
> \* \* \*
>
> Q: Okay. And to whom did you direct that letter?
> A: Brock & Scott, the lawyers of the plaintiff.
> MR. JACKSON: Okay. We're up to No. 6 now?
> (Deposition Exhibit No. 6 was marked for identification.)
> BY MR. JACKSON:
> Q: Show you a document marked for identification purposes as Exhibit No. 6; ask you if you've ever seen that document before.
> A: I have.
> Q: Okay. When do you recall having seen it?
> A: Well, I originally picked up that document and filled it out at the post office.
> Q: Okay. If I represent to you that that is a copy of a green card that is sent as a part of a certified mail package, would you have any reason to disagree with that?
> A: No.
> Q: Okay. Do you have any reason to disbelieve that this is the green card referencing receipt of Exhibit 4 by Defendant Brock & Scott, PLLC?
> A: I have no reason to disbelieve that.
> Q: Okay. I ask you if there's an indication on that card as to what date Exhibit 4 was received in the office of Brock & Scott, PLLC.
> A: Says it was received on the 18th of August.
> (Deposition of Alissa Jo Price, p. 23, line 12 - p. 24, line 13; p.32, line 12 - p.33, line 17.)

Defendant Brock & Scott, PLLC's testimony, given through Martin Harrison, Esq., reveals the following:

> MR. LEVIN: Okay. Lynette, if you could please have the court reporter mark the next exhibit, the August 14, 2009 letter from Alissa Price. It would be Exhibit No. 4.
> Q: Okay. Mr. Harrison, can you tell me if you recognize this document?
> A: I do.
> Q: And can you confirm for me whether Brock & Scott did in fact receive this letter from Alissa Price some time soon after August 14 of 2009?
> A: I can confirm that we did in fact receive it at some point on the afternoon of the 18th.
>
> * * *
>
> Q: Well, let's go back to Exhibit 2 for just a moment. Once this complaint is prepared by the paralegal, signed by you on August 17th of 2009, how exactly does it come to be filed with the court four days later, who is responsible for that?
> A: Once the complaint is signed, I believe at the time Melissa Lanier was responsible for making the requisite copies and placing the complaint in the mail.
> Q: So you're saying this complaint was filed by mail as opposed to somebody actually taking it to court and delivering it personally.
> A: Correct. It would have been placed in the mail either that day or the next day typically.
> (Deposition of Martin Harrison, p. 31, line 22 - p. 32, line 12; p. 34, line 4 - 16.)

The testimony reveals that the last action taken by Defendants to cause the filing of the complaint by sending the same in the outgoing mail occurred, at the latest, on the same day that the Plaintiff's demand letter was received by the Defendants in Defendant Brock & Scott, PLLC's incoming mail. Plaintiff's claim cannot succeed, unless Defendants are to be held liable for acting in disregard of a validation request of which they had not received notice, contrary to the provisions of 15 U.S.C. §1692g requiring such notice.

## CONCLUSION

Because the initial demand letter complained of by the Plaintiff, on its face, is neither overshadowing of, nor inconsistent with, the Plaintiff's rights as set forth in 15 U.S.C. § 1692g,

and further because the Defendants have not undertaken any act to collect the disputed indebtedness from the Plaintiff after the receipt of the Plaintiff's demand for validation, until after that demand was met, the Plaintiff has failed to show that, based upon the material facts as to which there is no genuine issue remaining, she is entitled to Judgment in her favor as a matter of law. Because, for the reasons set forth in Defendants' Motion to Dismiss (filed with the Answer to the original Complaint), the Plaintiff has failed to state any claim as to which she can be entitled to relief upon the merits, the Defendants are entitled to Judgment in their favor, dismissing the Plaintiff's claim with prejudice pursuant to Rule 12(b)(6), as set forth in the Answer; in the alternative, upon consideration by the Court of the deposition testimony set forth herein, Defendants are entitled to have that Motion treated at a Motion made pursuant to Rule 56, as set forth in Rule 12(d), and to have Judgment in their favor, dismissing the Complaint with prejudice.

Respectfully Submitted, this the 27th day of September, 2010.

BROCK & SCOTT, PLLC

/s/ Richard L. Jackson
Richard L. Jackson, NC Bar #30703
Counsel for the Defendants

BROCK & SCOTT, PLLC
1315 Westbrook Plaza Drive
Winston-Salem, NC 27103
Telephone: (336) 354-1797
Telefax: (336) 354-1588
Email: richard.jackson@brockandscott.com