**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

ALISSA PRICE,                          )
                                       )
                    Plaintiff,         )
                                       )
          v.                           )     1:10CV40
                                       )
BROCK & SCOTT, PLLC and                )
CHANNEL GROUP, LLC,                    )
                                       )
                    Defendants.        )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

This matter comes before the Court on:  (A) Plaintiff Alissa Price's Motion for Leave to File Second Amended Complaint (Docket Entry 32); (B) a Motion to Dismiss (Docket Entry 9) by Defendants Brock & Scott, PLLC ("Brock & Scott") and Channel Group, LLC ("Channel," or collectively with Brock & Scott, "Defendants"); (C) Price's Motion for Judgment on the Pleadings (Docket Entry 16); (D) Price's Motion for Summary Judgment (Docket Entry 33); (E) Defendants' Motion for Summary Judgment (Docket Entry 38); and (F) the parties' Consent Motion to Stay Mediation (Docket Entry 41).

For the reasons set forth herein:  (A) Price's Motion for Leave to File Second Amended Complaint (Docket Entry 32) will be granted; (B) Defendants' Motion to Dismiss (Docket Entry 9) should be granted in part and denied in part; (C) Price's Motion for Judgment on the Pleadings (Docket Entry 16) should be granted in part and denied in part; (D) Price's Motion for Summary Judgment (Docket Entry 33) should be granted in part and denied in part; (E) Defendants' Motion for Summary Judgment (Docket Entry 38) should be

denied; and (F) the parties' Consent Motion to Stay Mediation (Docket Entry 41) will be denied as moot.

## I. PRICE'S CLAIMS

This action involves claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, <u>et seq.</u> (<u>See</u> Docket Entry 1 (Compl.), ¶ 13; Docket Entry 14 (First Am. Compl.), ¶ 13; Docket Entry 32-1 (Proposed Second Am. Compl.), ¶ 12.) Congress promulgated the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). "The FDCPA applies only to 'debt collectors' seeking satisfaction of 'debts' from 'consumers'; it does not apply to 'creditors.'" <u>McKinney v. Cadleway Properties, Inc.</u>, 548 F.3d 496, 500 (7th Cir. 2008).

In this regard, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). A "debt" is defined as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household

purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "The term 'consumer' means any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).

As set forth in their pleadings, the parties do not dispute that Brock & Scott qualifies as a "debt collector," that the underlying money sought from Price represents a "debt," or that Price constitutes a "consumer." (Docket Entry 1, ¶¶ 4-5; Docket Entry 9 (Answer) at 6-7 (¶¶ 4-5); Docket Entry 14, ¶¶ 4-5; Docket Entry 32-1, ¶¶ 4-5.) The parties' pleadings, however, reflect disagreement as to whether Channel qualifies as a "debt collector." (Docket Entry 1, ¶ 5; Docket Entry 9 at 6-7 (¶ 5); Docket Entry 14, ¶ 5; Docket Entry 32-1, ¶ 5.)

Price's original Complaint alleged that Defendants violated the FDCPA by:

1) "Falsely representing the character amount and/or legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A)" (Docket Entry 1, ¶ 13a);

2) "Participating in collection activities which <u>overshadowed</u> and/or were inconsistent with [Price's] right to dispute the debt or to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(b)" (<u>id.</u>, ¶ 13b (emphasis added));

3) "Failing to <u>cease collection</u> activities prior to providing verification of the alleged debt, where [Price] notified Defendants in writing within the applicable 30-day period that the debt was

disputed, in violation of 15 U.S.C. § 1692g(b)" (id., ¶ 13c (emphasis added)); and

4) "[A]cting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the FDCPA" (id., ¶ 13d).

The First Amended Complaint set forth the same four claims as the original Complaint. (See Docket Entry 14, ¶ 13a-d). The proposed Second Amended Complaint, however, alleges that Defendants committed only two violations of the FDCPA:

1) "Participating in collection activities which <u>overshadowed</u> and/or were inconsistent with [Price's] right to dispute the debt or to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(b)" (Docket Entry 32-1, ¶ 12a (emphasis added)); and

2) "Failing to <u>cease collection</u> activities prior to providing verification of the alleged debt, where [Price] notified Defendants in writing within the applicable 30-day period that the debt was disputed, in violation of 15 U.S.C. § 1692g(b)" (id., ¶ 12b (emphasis added)).[1]

The section of the FDCPA cited by Price in connection with the two claims she now wishes to pursue contains two subsections. Subsection (a) states:

---

[1] In addition, whereas the original Complaint and First Amended Complaint prayed for actual and statutory damages (see Docket Entry 1 at 3-4; Docket Entry 14 at 3-4), the prayer for relief in the proposed Second Amended Complaint eliminates any request for actual damages (Docket Entry 32-1 at 3).

Within five days after <u>the initial communication</u> with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a <u>written notice</u> containing—

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, <u>within thirty days after receipt of the notice</u>, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing <u>within the thirty-day period</u> that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request <u>within the thirty-day period</u>, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a) (emphasis added).

Subsection (b) provides that a debt collector's failure to cease collection activities during the period after a consumer has made a verification request, but before the debt collector provides the requested verification, violates the FDCPA:

> <u>If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a)</u> of this section <u>that the debt</u>, or any portion thereof, <u>is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt</u>, or any disputed portion thereof, <u>until</u> the debt collector obtains verification of the debt or a copy of a judgment, or the

name and address of the original creditor, and <u>a copy of such verification</u> or judgment, or name and address of the original creditor, <u>is mailed to the consumer by the debt collector</u>.

15 U.S.C. § 1692g(b) (emphasis added).

In 2006, Congress amended 15 U.S.C. § 1692g(b) by making two additions. Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1966, 2006-2007 (2006). First, it clarified that "[c]ollection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor." 15 U.S.C. § 1692g(b). Second, the amendment prohibited acts by a debt collector "during" the thirty-day period that "overshadow" the consumer's right to dispute the debt or request verification information. <u>Id.</u> ("Any collection activities and communication <u>during</u> the 30-day period may not <u>overshadow</u> or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." (emphasis added)).

A separate section of the FDCPA imposes civil liability upon a debt collector "who <u>fails to comply</u> with any provision of this title[.]" 15 U.S.C. § 1692k(a) (emphasis added). Plaintiffs may obtain "actual damage[s]" and "costs of the action, together with a reasonable attorney's fee as determined by the court." <u>Id.</u> Moreover, a plaintiff may receive "additional damages" up to a

6

statutory limit of $1,000.  Id.  If a court finds that a plaintiff brought an FDCPA action "in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs."  Id.

## II.  PROCEDURAL BACKGROUND

Price's original Complaint alleged that, "[o]n or about August 16, 2009, received [sic] a letter from Brock & Scott – who was acting as the attorneys and authorized agent of Channel – that was dated August 12, 2009, in regard to the collection of [an] alleged debt."  (Docket Entry 1, ¶ 7.)[2]  According to the attached copy, Brock & Scott's August 12, 2009 letter stated as follows:

> Re: Your CHASE MANHATTAN BANK Account, Now Owned By CHANNEL GROUP, LLC
>
> Account number: 4266841045033915
> Our file number: CHN09374
> Amount Owed $2,044.76, with interest at 26.74% per annum
>
> August 12, 2009
>
> Dear ALISSA PRICE,
>
> This law firm has been retained by the above referenced creditor to file a lawsuit against you immediately for the collection of the debt referenced above.  However, you can make arrangements to satisfy the balance shown above by contacting our office.  If you do not make payment upon this debt in an amount acceptable to our client, we will instruct the Sheriff of your county to serve you with a Court-issued summons at your home, your work, or wherever else you may be found by him.  We will then apply to the Court for a Judgment against you, and if Judgment is granted, we may request that the Sheriff

---

[2]  In neither her Amended Complaint nor her proposed Second Amended Complaint has Price corrected her scrivener's error omitting her name as the subject of this sentence, although she did alter other parts of the same paragraph.  (See Docket Entry 14, ¶ 7; Docket Entry 32-1, ¶ 7.)

enforce the Judgment by levying an execution upon your property not exempt from Judgment.

Please note that interest continues to accrue at 26.74% per annum upon this unpaid obligation until the matter is resolved in full. You may contact our office at **BROCK & SCOTT PLLC, Attn: Collections, at 1315 Westbrook Plaza Dr, Winston-Salem, NC 27103, or by telephone at either (336) 354-0110 or (888) 461-7908**. We will assume this debt is valid unless you dispute the validity of all or part within 30 days of receipt of this letter. If you notify us **in writing** that you dispute all or a portion of this debt, we will send you verification of the debt or a copy of the judgment against you. Upon **written request** within 30 days after receipt of this notice we will provide you with the name and address of the original creditor if different from the creditor named above. For further information on this urgent matter, please contact our office at 336-354-0110 or 888-461-7908.

(Docket Entry 1-2 (apparent handwritten emphasis omitted).)

The Complaint further alleged that "[t]he very next day [Price] received a telephone call from a person identifying herself as a representative of Brock & Scott, who informed [Price] that Brock & Scott was going to have the sheriff serve her with civil court papers, as she had not made payment of the alleged debt." (Docket Entry 1, ¶ 8.) According to the Complaint, "[o]n or about August 14, 2009, [Price] mailed a letter to Brock & Scott requesting validation and verification of the alleged debt pursuant to 15 U.S.C. 1692g." (Docket Entry 1, ¶ 9.)

The attached copy of said letter reflects that Price wrote the following:

Validation of debt request
(Sent via certified mail)

August 14, 2009

To: Brock & Scott, PLLC

8

RE: Alissa Price

To whom it may concern:

This is a written request for validation of the debt referred to in your recent letter. The Federal Trade Commission, in 15 U.S[.]C. 1692g, requires that debt collectors cease collection of a debt until verification of that debt is mailed to consumers.

Please provide this information in writing via U.S. mail at the address listed above.

(Docket Entry 1-3 at 1 (addresses and account numbers omitted).)

According to the Complaint, "Brock & Scott did not respond to [said] letter . . . and instead, on August 21, 2009, Brock & Scott filed a lawsuit against [Price], on behalf of Channel, in the Durham County, North Carolina District Court, in a further attempt to collect the alleged debt." (Docket Entry 1, ¶ 10.)

Defendants responded to the Complaint with a "Joint Motion to Dismiss and Answer." (Docket Entry 9.)[3] In said motion, Defendants pointed out that, based on the dates alleged in the Complaint, Price had requested validation of the debt before she received the initial communication about the debt from Brock & Scott. (Id. at 5.) Price then filed a First Amended Complaint (as of right under Fed. R. Civ. P. 15(a)(1)(B)) which altered the alleged time line of events as follows:

---

[3] Defendants failed to file a supporting brief. "All motions . . . shall be accompanied by a brief except as provided in section (j) of this rule." M.D.N.C. R. 7.3(a). Section (j) does not exempt motions to dismiss. See M.D.N.C. R. 7.3(j). "A motion unaccompanied by a required brief may, in the discretion of the court, be summarily denied." M.D.N.C. R. 7.3(k). The parties' other dispositive motions suffer from the same deficiency. (See Docket Entries 16, 33, 38.) Under these circumstances, the Court could, but will not, sua sponte strike the parties' deficient documents. See M.D.N.C. R. 83.4(3). The Court advises the parties to pay closer attention to the Local Rules.

7. On or about August 14, 2009, received a letter from Brock and Scott – whose representatives were acting as the attorneys and authorized agents of Channel – that was dated August 12, 2009, in regard to the collection of the aforementioned alleged debt. . . .

8. On or about August 14, 2009, Plaintiff mailed a letter to Brock & Scott requesting validation and verification of the alleged debt pursuant to 15 U.S.C. 1692g.

9. The very next day after her receipt of Defendants' letter, Plaintiff received a telephone call from a person identifying herself as a representative of Brock & Scott, who informed Plaintiff that Brock & Scott was going to have the sheriff serve her with civil court papers, as she had not made payment of the alleged debt.

10. Brock & Scott did not respond to Plaintiff's letter of August 14, 2009 and instead, on August 21, 2009, Brock & Scott filed a lawsuit against Plaintiff, on behalf of Channel, in the Durham County, North Carolina District Court, in a further attempt to collect the alleged debt.

(Docket Entry 14 at 2-3.)  Price also responded in opposition to Defendants' Motion to Dismiss and moved for judgment on the pleadings.  (Docket Entries 15, 16).

The Court, per Magistrate Judge P. Trevor Sharp, thereafter notified the parties that "[t]he case is selected for mediation – to be completed by the end of the discovery period [on July 15, 2010]."  (Docket Entry 18; see also Docket Entry 17.)  Shortly before the close of discovery, the parties filed a joint motion seeking to defer mediation until December 1, 2010 (Docket Entry 23 at 2), which Magistrate Judge Sharp granted (Docket Entry 25).  At the parties' joint request, the Court (per Magistrate Judge Sharp)

also granted the parties' joint request to extend the discovery deadline to July 22, 2010. (Docket Entries 26, 29.)

After the close of discovery, Price sought leave to file a Second Amended Complaint (Docket Entry 32) and moved for summary judgment (Docket Entry 33). Defendants' filed a response to the former motion (Docket Entry 34), as well as a "Brief in Response to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment" (Docket Entry 38), as to which Price filed a reply/response (Docket Entry 43). The parties also filed a Consent Motion to Stay Mediation. (Docket Entry 40.)

## III. DISCUSSION

### A. Price's Motion For Leave to File Second Amended Complaint

Price moved to file a Second Amended Complaint, because she "failed to attach the exhibits to the First Amended Complaint." (Docket Entry 32 at 1.) She also wished to "abandon her claims that Defendants violated the [FDCPA] . . . by 'falsely representing the character amount and/or legal status of the debt[,]'" and "'acting in an otherwise deceptive, unfair and unconscionable manner and failing to comply with the FDCPA.'" (<u>Id.</u>) Moreover, Price's proposed amendment "remove[s] any request for actual damages . . . ." (<u>Id.</u>)[4] Defendants "do not oppose the dismissal of [any of Price's] claim[s] for relief" (Docket Entry 34 at 1) or Price's "abandonment of any claim for actual damages" (<u>id.</u> at 2).

---

[4] In fact, although Price's new prayer for relief no longer demands actual damages (<u>see</u> Docket Entry 32-1 at 3), the introductory paragraph in the proposed Second Amended Complaint continues to describe the suit as "an action for <u>actual</u> and statutory damages (<u>id.</u>, ¶ 1 (emphasis added)).

However, Defendants have objected to Price's proposal "to the extent that withdrawal of the . . . claims . . . is other than 'with prejudice'" and they "likewise do not consent . . . to the extent that such amendment is prejudicial to the Defendant's right to petition the Court for . . . an award of the attorney's fees and expenses incurred in defending against the withdrawn claims . . . ." (Id.)

Given the current procedural posture of the case, Price may "amend [her] pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Said rule further directs that "[t]he court should freely give leave when justice so requires." Id. Under this standard, the Court has some discretion, "but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion." Foman v. Davis, 371 U.S. 178, 182 (1962). The United States Court of Appeals for the Fourth Circuit has explained that "[t]he law is well settled that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999). See also Foman, 371 U.S. at 182 (identifying "undue delay," "bad faith," "undue prejudice," and "futility," as grounds to deny amendment).

According to Defendants, they do not consent "to the extent that the withdrawal of the above-referenced claims of [Price] is other than 'with prejudice,' as Defendants are entitled to have a

final resolution of the claims raised by [Price], so as to avoid the uncertainty of future litigation, if any." (Docket Entry 34 at 2.) Although Rule 15's express terms do not address this issue, Rule 41's provisions regarding dismissal of actions offers some guidance; said rule states that a plaintiff may voluntarily dismiss an action before a defendant moves for summary judgment and that such dismissal generally "is without prejudice," Fed. R. Civ. P. 41(a)(1). The same presumption applies to amendments under Rule 15(a) that eliminate some but not all claims. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1107 (11th Cir. 2004) ("Unless the plaintiff's motion or the district court's order stipulates otherwise, a claim dropped through a Rule 15 amendment – or, for that matter, an action dropped pursuant to Rule 41(a) – is dismissed without prejudice.").

Defendants' assertion of prejudice in the form of "uncertainty of future litigation" (Docket Entry 34 at 2) is adequately addressed by the FDCPA's statute of limitation which requires the filing of "[a]n action to enforce any liability . . . within one year from the date on which the violation occurs," 15 U.S.C. § 1692k(d). That period has now run and the parties have not identified any basis to conclude it has been tolled.[5]

---

[5] Some courts have treated the FDCPA's limitations period as jurisdictional, see, e.g., Mattson v. U.S. West Comm., Inc., 967 F.2d 259, 262 (8th Cir. 1992), but others have rejected this view and have found that equitable tolling doctrines apply to the FDCPA, see, e.g., Mangum v. Action Collection Servs., Inc., 575 F.3d 935, 939-40 (9th Cir. 2009). The Fourth Circuit apparently has not addressed this issue. See Queen v. Walker, No. RWT 09 cv 3428, 2010 U.S. Dist. LEXIS 67263, at *13 (D. Md. July 7, 2010) (unpublished).

Beyond their desire for a "final resolution" of the vacated claims, Defendants have implied that Price's proposed amendments might prejudice their ability to recover attorney's fees under 15 U.S.C. § 1692k(a). (See Docket Entry 34 at 2.) Defendants have cited no authority that, absent a dismissal with prejudice, the proposed amendment would impair their right to such recovery. (See id.) Nor have Defendants identified case law establishing that concern about such matters constitutes "prejudice" within the meaning of Foman and its progeny. (See id.) Moreover, Defendants do not argue that Price moved to amend in bad faith with the intent to defeat their claim to attorney's fees. (See id.) Under these circumstances, the Court will grant Plaintiff's request to amend.[6]

### B.  Defendants' Motion to Dismiss

In response to Price's Complaint, Defendants asserted that the Court should dismiss her claims via Rule 12(b)(6). Although Price has now twice amended her Complaint without Defendants renewing their dismissal motion, the undersigned Magistrate Judge will examine whether the arguments Defendants raised in said motion reveal any legal insufficiency as to Price's remaining claims.

### 1.  Legal Standard

A Rule 12(b)(6) motion "challenges the legal sufficiency of a complaint considered with the assumption that the facts are alleged to be true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir.

---

[6] For reasons stated in DeBerry v. Davis, No. 1:08CV582, 2010 WL 1610430, at *7 n.8 (M.D.N.C. Apr. 19, 2010) (unpublished), the undersigned United States Magistrate Judge will enter an order, rather than a recommendation, regarding Price's instant request to amend.

14

2009) (internal citations omitted). A complaint falls short if it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "[D]etermining whether a complaint states on its face a plausible claim for relief and therefore can survive a Rule 12(b)(6) motion . . . requires the reviewing court to draw on its judicial experience and common sense." <u>Francis</u>, 588 F.3d at 193.

### 2. Analysis

#### a. Price's Overshadowing Claim

In her proposed Second Amended Complaint (as in her original Complaint), Price has alleged that Defendants "[p]articipat[ed] in collection activities which overshadowed and/or were inconsistent with [Price's] right to dispute the debt or to request the name and address of the original creditor, in violation of 15 U.S.C. § 1692g(b)." (Docket Entry 32-1, ¶ 12a; <u>accord</u> Docket Entry 1, ¶ 13b). Defendants have argued that this claim fails as a matter law. (Docket Entry 9 at 4.) Price, however, has maintained that she has alleged a viable claim for "overshadowing" based on: (i) the letter dated August 12, 2009; (ii) the telephone call on August 15, 2009; and (iii) the filing of civil litigation on August 21, 2009. (Docket Entry 15 at 5-14.)

### i.  Letter dated August 12, 2009

Defendants argue that the letter from Brock & Scott dated August 12, 2009, does not constitute overshadowing because:

> on its face, [said letter] provides notice to [Price], as required by 15 U.S.C. § 1692g, of the amount of the debt, the name of the current creditor, [Price's] right to dispute the debt in writing within 30 days after her receipt of the letter, and [Price's] right to request in writing, the name and address of the original creditor if different from the current creditor.

(Docket Entry 9 at 4.)   In another FDCPA case involving Brock & Scott, this Court, per Judge Thomas D. Schroeder, recently rejected this exact argument and determined – after exhaustive analysis – that a materially indistinguishable letter from Brock & Scott not only could support an overshadowing claim, but in fact constituted overshadowing as a matter of law.   See Garcia-Contreras v. Brock & Scott, PLLC, No. 1:09CV761, slip op. at 2-3, 20-33 (M.D.N.C. Mar. 31, 2011) (unpublished).[7]   In light of this well-reasoned authority, Price's overshadowing claim based on the letter dated August 12, 2009, should not be dismissed, but instead Defendants' Motion to Dismiss that portion of the case should be denied.

---

[7] In reaching this conclusion, Judge Schroeder rejected the undersigned United States Magistrate Judge's recommendation that the Court should dismiss the plaintiff's overshadowing claim based on the letter, because the plaintiff's complaint identified an overshadowing claim only under § 1692g(b) of the FDCPA and the plain language of said section established that it did not apply to initial communications (such as the letter), but rather only to matters during the 30-day period after an initial communication.   See Garcia-Contreras, No. 1:09CV761, slip op. at 7-18.   In reaching that conclusion, Judge Schroeder emphasized that the defendants (including Brock & Scott) "never argued that the 'overshadowing' prohibition did not apply to their initial communication or that [the plaintiff] failed to allege an 'overshadowing' claim under § 1692g." Id. at 16.  The same circumstances exist in this case and it would be incongruous for the Court to reach a different result.

As with her original Complaint (see Docket Entry 1, ¶¶ 7-8), Plaintiff has alleged that, on the day after she received her initial communication from Brock & Scott, she "received a telephone call from a person identifying herself as a representative of Brock & Scott, who informed [Price] that Brock & Scott was going to have the sheriff serve her with civil court papers, as she had not made payment of the alleged debt."  (Docket Entry 32-1, ¶¶ 8-9.) Defendants argue that the telephone call "is neither inconsistent with, nor overshadowing of, [Price's] rights protected by section 1692g(b)."  (Docket Entry 9 at 4.)

This alleged telephone call threatening legal action constitutes potentially overshadowing collection activity; as the United States Court of Appeals for the Third Circuit has explained:

> [T]he notice [required by the FDCPA] must not be overshadowed or contradicted by accompanying messages from the debt collector.  There is a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days.  A notice of rights, when presented in conjunction with such a contradictory demand, is not effectively communicated to the debtor.

Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) (internal citations omitted, emphasis added).

Other district courts have observed that a telephone call could potentially overshadow the FDCPA's required notice, although those courts did not find that such overshadowing by telephone call occurred in those particular instances.  See Casey v. I.C. Sys.,

No. 8:09-cv-210-T-24TBM, 2010 U.S. Dist. LEXIS 7741, at *11-12
(M.D. Fla. Jan. 29, 2010) (unpublished) ("Moreover, [the debtor]
has not presented any evidence of . . . phone calls from [the debt
collector] during or after the thirty-day period that would
overshadow or contradict the validation notice."); Ostrander v.
Accelerated Receivables, No. 07-CV-827C, 2009 U.S. Dist. LEXIS
27321, at *16 (W.D.N.Y. Mar. 31, 2009) (unpublished) ("Defendants'
letters to plaintiff provided plaintiff with notice of all rights
under the FDCPA, and no contradictory language overshadowed the
validation notice either in the letters themselves or the
subsequent telephone messages or conversation.").

Under these circumstances, Price has adequately alleged a
claim that the telephone call on August 15, 2009, constituted
overshadowing and the Court, therefore, should deny Defendants'
Motion to Dismiss as to that matter.

### iii. Commencing Civil Litigation

In challenging the legal sufficiency of Price's overshadowing
claim, Defendants argued that "[c]ommencing civil litigation is not
inconsistent with, or overshadowing of, [Price's] rights under [the
FDCPA]." (Docket Entry 9 at 4.) Price has responded that, because
Brock & Scott filed the state lawsuit "without advising [her] that
[it] would have no effect on her validation rights," it
overshadowed her right to request validation of the debt. (Docket
Entry 15 at 17.) In support of their position on this issue,
Defendants provide an incomplete quote from a decision of the
United States Court of Appeals for the Seventh Circuit, i.e., that

18

"'[t]he debt collector is perfectly free to sue within thirty days . . .'" (Docket Entry 9 at 5 (quoting <u>Bartlett v. Heibl</u>, 128 F.3d 497, 501 (7th Cir. 1997)) (ellipses in original)).

In the quoted case, the Seventh Circuit reversed a district court's finding regarding the lawfulness of an initial communication letter. See <u>Bartlett</u>, 128 F.3d at 501-02.[8] In rejecting the plaintiff's contention that a debt collector must refrain from even alluding to its right to bring a lawsuit within the thirty-day period, the Seventh Circuit stated: "The debt collector is perfectly free to sue within thirty days; he just must cease his efforts at collection during the interval between being asked for verification of the debt and mailing the verification to the debtor." <u>Id.</u> (emphasis added). Nothing in this language forecloses an overshadowing claim predicated on the filing of a debt collection action. Furthermore, the United States Court of Appeals for the Second Circuit has recognized that serving a summons and complaint without clarification that such service did not affect the debtor's rights under the FDCPA could constitute overshadowing activity. See <u>Ellis v. Solomon and Solomon, P.C.</u>, 591 F.3d 130, 136 (2d Cir. 2010) (holding "that the validation notice is overshadowed where a debt collector serves a consumer with process initiating a lawsuit during the validation period,

_____

[8] The letter included a notice that the debtor could contest the debt within thirty days, but also contained a threat of a lawsuit if the debt remained unpaid within a week of the letter. <u>Bartlett</u>, 128 F.3d at 499-501.

without clarifying that commencement of the lawsuit has no effect on the information conveyed in the validation notice").

Price's Second Amended Complaint, however, does not allege that she was ever served with Defendants' state lawsuit. (See Docket Entry 32-1, ¶ 10.) In the absence of such an allegation, Price has not stated a viable claim (under the reasoning of <u>Ellis</u>) for overshadowing based on Defendants' filing of a state lawsuit.[9] The Court thus should grant Defendants' Motion to Dismiss as to that aspect of Price's overshadowing claim.

### b. Price's Cease-Collection Claim

Price's second remaining claim asserts (as did her original Complaint) that Defendants violated 15 U.S.C. § 1692g(b) when they "[f]ail[ed] to cease collection activities prior to providing verification of the alleged debt . . . ." (Docket Entry 32-1, ¶ 12b; <u>accord</u> Docket Entry 1, ¶ 13c.) In their motion to dismiss, Defendants argued that "[Price] ha[d] not properly demanded [a] validation under section 1692g[,]" because Price's "request was not sent during the period required by law[.]" (Docket Entry 9 at 5.) More specifically, Defendants contended that Price's original Complaint alleged that Price mailed her validation request to Brock & Scott on August 14, 2009, <u>prior</u> to her receipt of the initial communication, which the original Complaint alleged she received on

---

[9] This result makes sense because, in the absence of service of a collection lawsuit on a debtor (or some other allegation establishing that the debtor had notice of the filing of a collection lawsuit), no basis exists to infer that the lawsuit's filing could have affected (i.e., overshadowed) the debtor's understanding of her notice of rights under the FDCPA.

August 16, 2009. (Docket Entry 9 at 5; <u>see also</u> Docket Entry 1, ¶¶ 7, 9.) Price's revision of the time line of events in her First Amended Complaint (detailed above, <u>supra</u>, pp. 7-10) – which allegations she has carried forward into her proposed Second Amended Complaint (<u>see</u> Docket Entry 32-1, ¶¶ 7-8) – mooted Defendants' argument in this regard.[10]

Accordingly, the Court should deny Defendants' Motion to Dismiss as it relates to Price's cease-collection claim.

### C. Price's Motion for Judgment on the Pleadings

After she filed her First Amended Complaint on March 9, 2010 (Docket Entry 14), Price moved for judgment as a matter of law under Rule 12(c) on her overshadowing claim on March 10, 2010 (<u>see</u> Docket Entry 16 at 7). Defendants did not file a new Answer or otherwise respond to Price's First Amended Complaint;[11] nor did Defendants respond to Price's Motion for Judgment on the Pleadings. (<u>See</u> Docket Entries from Mar. 10, 2009, to present.) For her part, Price has not renewed her Motion for Judgment on the Pleadings in connection with her proposed Second Amended Complaint. (<u>See</u> Docket Entries dated Aug. 12, 2010, to present.) Although some question

---

[10] To the extent the chronology in the Second Amended Complaint proper still admits any ambiguity as to whether Price sent her validation request letter before she received the initial communication from Brock & Scott, the content of the validation request letter (incorporated into the Second Amended Complaint as an attachment thereto) makes the alleged sequence clear in a manner that defeats Defendants' motion to dismiss this claim. (<u>See</u> Docket Entry 32-3 at 1.)

[11] "Rule 15(a)(3) provides a deadline for responding to an amended complaint (if a response is required), but does not state when a response is required . . . ." <u>Wagner v. Choice Home Lending</u>, 266 F.R.D. 354, 358 (D. Ariz. 2009).

may exist as to whether Price's Motion for Judgment on the Pleadings has become moot (because of the filing of new pleadings) or remains not yet ripe (because of the lack of any responsive pleading from Defendants after their initial Answer), see Fed. R. Civ. P. 12(c) (permitting filing of motion for judgment on the pleadings only "[a]fter the pleadings are closed"), the undersigned Magistrate Judge will analyze whether the allegations in Price's Second Amended Complaint measured against Defendants' prior answers to the precursor allegations of Price's original Complaint entitle Price to judgment as a matter of law.

### 1. Legal Standard

In resolving a Rule 12(c) motion, the Court must assume "the facts alleged in the complaint are true and draw all reasonable factual inferences in [the non-movant's] favor." Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). "[A] court ruling on a Rule 12(c) motion may consider the answer as well as the complaint." In re Stucco Litigation, 364 F. Supp. 2d 539, 541 (E.D.N.C. 2005). In addition, the Court also may consider "judicially noticed facts." Davenport v. Davenport, 146 F. Supp. 2d 770, 783 (M.D.N.C. 2001) (Beaty, J.). In other respects, the standard for evaluation of a Rule 12(c) motion mirrors that applicable to a motion to dismiss under Rule 12 (b)(6). See Continental Cleaning Serv. v. United Parcel Serv., Inc., No. 1:98CV1056, 1999 WL 1939249, at *2 (M.D.N.C. Apr. 13, 1999) (Sharp, M.J.) ("[A] motion to dismiss under Rule 12(b)(6) and a motion for judgment on the pleadings under Rule 12(c) are considered under a

similar standard, with the key difference being that on a 12(c) motion, the court is to consider the answer as well as the complaint." (internal quotation marks omitted)).

### 2. Analysis

Price bases her instant motion on two actions taken by Defendants. First, she asserts that language in Brock & Scott's letter dated August 12, 2009, overshadowed the required notice of her rights under the FDCPA. (Docket Entry 16 at 7-16.) Second, she asserts that Brock & Scott engaged in further overshadowing by commencing the state lawsuit. (Id. at 17-19.)

As previously discussed, see supra, p. 16, this Court, per Judge Schroeder, recently determined that another materially indistinguishable version of this letter constituted unlawful overshadowing under the FDCPA as a matter of law. See Garcia-Contreras, No. 1:09CV761, slip op. at 20-33. Defendants' Answer neither disputes that Brock & Scott sent the letter attached to Price's original Complaint (which also appears as an attachment to her proposed Second Amended Complaint (compare Docket Entry 1-2 with Docket Entry 32-2)) nor asserts that the attached copy incompletely or inaccurately reflects the letter Brock & Scott sent. (See Docket Entry 9 at 6-7.) For reasons stated by Judge Schroeder, the Court should grant judgment on the pleadings for Price on her overshadowing claim related to Brock & Scott's letter dated August 12, 2009; however, because Defendants' Answer denied that Channel qualified as a "debt collector" (id.), the Court should enter such judgment only against Brock & Scott and not

23

against Channel. Conversely, in light of the earlier recommendation that the Court grant Defendants' Motion to Dismiss the portion of Price's overshadowing claim predicated on Defendants' filing of a state collection action, see supra, pp. 18-20, the Court should deny Price's Motion for Judgment on the Pleadings as to that aspect of her overshadowing claim.

### D. Price's Motion for Summary Judgment

#### 1. Legal Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party may discharge its burden by identifying an absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus., 475 U.S. at 586-87 (citation omitted) (emphasis in original). The nonmoving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the

nonmoving party. <u>Anderson</u>, 477 U.S. at 252 (citation omitted).
<u>See also</u> <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308
(4th Cir. 2006) ("Mere unsupported speculation is not sufficient to
defeat a summary judgment motion if the undisputed evidence
indicates that the other party should win as a matter of law.").

### 2. Analysis

Price has moved for summary judgment on both her overshadowing
and her cease-collection claims. (<u>See</u> Docket Entry 33 at 3.)

### a. Price's Overshadowing Claim

Price's arguments as to her overshadowing claim focus entirely
on Brock & Scott's letter dated August 12, 2009. (<u>See</u> <u>id.</u> at 7-
14.) Because (for reasons previously discussed, <u>see</u> <u>supra</u>, pp. 23-
24) the Court should enter judgment as a matter of law for Price
against Brock & Scott on that aspect of her overshadowing claim,
the Court also, or alternatively, should grant Price's Motion for
Summary Judgment on that portion of her overshadowing claim – but
again only as to Brock & Scott.

In her Motion for Summary Judgment, Price asserted that
"Channel is liable under the FDCPA for the actions of its attorneys
and authorized agents, Brock & Scott." (Docket Entry 33 at 18
(emphasis omitted).) In support of this position, Price cites a
statement in a decision from the District of New Mexico that
"'[d]ebt collectors employing attorneys or other agents to carry
out debt collection practices that violate the FDCPA are
vicariously liable for their agent's conduct.'" (<u>Id.</u> (quoting
<u>Martinez v. Albuquerque Collection Servs., Inc.</u>, 867  F. Supp.

1495, 1502 (D.N.M. 1994)) (emphasis added).) As the underlined portion of the quotation reflects, <u>Martinez</u> assists Price in securing judgment against Channel only if Channel qualifies as a "debt collector." The United States Court of Appeals for the Third Circuit explained the situation as follows:

> Although there is relatively little case law on the subject of vicarious liability under the FDCPA, there are cases supporting the notion that <u>an entity which itself meets the definition of "debt collector" may be held vicariously liable for unlawful collection activities carried out by another on its behalf</u>. In <u>Fox v. Citicorp Credit Services, Inc.</u>, 15 F.3d 1507 (9th Cir. 1994), the court indicated that a company which had been asked to collect a defaulted debt could be held vicariously liable for its attorney's conduct which was in violation of the FDCPA. <u>See id.</u> at 1516. By contrast, in <u>Wadlington [v. Credit Acceptance Corp.</u>, 76 F.3d 103, 108 (6th Cir. 1996)], the Court of Appeals for the Sixth Circuit declined to impose vicarious liability on a company for the actions of its attorney . . . [where] the company itself did not meet the definition of "debt collector" . . . . The <u>Wadlington</u> court specifically distinguished <u>Fox</u> because in <u>Fox</u> the entity allegedly vicariously liable for the attorney's conduct was itself a debt collector. <u>See id.</u> The rule to be gleaned from <u>Fox</u> and <u>Wadlington</u> . . . [is] "that <u>the client of an attorney who is a 'debt collector,' as defined in § 1692a(6), is vicariously liable for the attorney's misconduct if the client is itself a debt collector as defined in the statute. Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).</u>" <u>First Interstate Bank of Fort Collins v. Soucie</u>, 924 P.2d 1200, 1202 (Colo. Ct. App. 1996).

<u>Pollice v. National Tax Funding, L.P.</u>, 225 F.3d 379, 404-05 (3d Cir. 2000) (emphasis added).

Price's Motion for Summary Judgment identifies no record evidence regarding whether Channel qualifies as a "debt collector" in this case, much less evidence that would establish that fact as

a matter of law.  (<u>See</u> Docket Entry 33 at 18-19.)[12]  Accordingly, the Court should enter summary judgment for Price on her overshadowing claim premised on Brock & Scott's letter dated August 12, 2009, only against Brock & Scott.

### b. Price's Cease-Collection Claim

In moving for summary judgment as to her cease-collection claim, Price relied on <u>Anderson v. Frederick J. Hanna & Assocs.</u>, 361 F. Supp. 2d 1379 (N.D. Ga. 2005), and <u>McDaniel v. South & Assocs., P.C.</u>, 325 F. Supp. 2d 1210 (D. Kan. 2004), to support her contention that "filing a collection lawsuit against an alleged debtor, prior to providing the consumer with verification of the debt, where the consumer has timely requested that verification, is a violation of 15 U.S.C. § 1692g."  (Docket Entry 33 at 15-16.)  Defendants have responded that they "cause[d] the filing of the complaint by sending the same in the outgoing mail . . . at the very latest, on the same day that [Price's] demand letter was received . . . ."  (Docket Entry 38 at 7.)

In her deposition, Price stated that she sent her validation request by certified mail (Docket Entry 38-1 (Price Dep. Sept. 7, 2010) at 32:2-4) and that the certified mail receipt indicated that

---

[12] As detailed above, <u>see</u> <u>supra</u>, p. 3, in their Answer, Defendants conceded that, for purposes of Price's claims, Brock & Scott qualified as a "debt collector" subject to the FDCPA, but denied that Channel so qualified.  (<u>See</u> Docket Entry 9 at 6-7.)  This circumstance differentiates this case from <u>Garcia-Contreras</u>, where – in granting summary judgment for the plaintiff against both Brock & Scott and its client – Judge Schroeder accepted the plaintiff's theory of vicarious liability.  <u>See</u> <u>Garcia-Contreras</u>, No. 1:09CV761, slip op. at 33 n.11; <u>see also</u> <u>Garcia Contreras</u>, No. 1:09CV761, Docket Entry 4 at 8 (¶ 5) (Answer filed Oct. 27, 2009) (admitting that both Defendants were "'debt collectors'").

Brock & Scott received the letter on August 18, 2009 (id. at 33:8-17). Martin Harrison, the managing partner of Brock & Scott's Collections Division, confirmed that Brock & Scott received the letter "on the afternoon of [August] 18th." (Docket Entry 38-2 (Harrison Dep. July 20, 2010) at 4:12-17, 32:8-12.) As to the filing of the debt collection suit, Harrison testified as follows:

> Q. . . . Once this complaint is prepared by the paralegal, signed by you on August 17th of 2009, how exactly does it come to be filed with the court four days later, who is responsible for that?
>
> A. Once the complaint is signed, I believe at the time Melissa Lanier was responsible for making the requisite copies and placing the complaint in the mail.
>
> Q. So you're saying this complaint was filed by mail as opposed to somebody actually taking it to court and delivering it personally?
>
> A. Correct. It would have been placed in the mail either that day [August 17, 2009] or the next day typically.
>
> Q. Is there any way to determine for certain when that was placed in the mail?
>
> A. I don't know of a way other than if Durham -- I think this was filed in Durham County -- other than it was sent to a batch [sic] to Durham County and maybe by chance have a copy of the -- or retained the envelope that it was that [sic] sent in.

(Id. at 34:4-23 (emphasis added); see also Docket Entry 32-4 at 1 (copy of state complaint reflecting signature by Harrison on August 17, 2009, and file-stamp by state court clerk on August 21, 2009).)

Based on this evidence, a genuine issue of material fact exists as to whether Brock & Scott engaged in collection activity after it received Price's validation request. The Court thus

should deny Price's Motion for Summary Judgment on her cease-collection claim.[13]

E. Defendants' Motion for Summary Judgment

Defendants filed a "Brief in Response to Plaintiff's Motion for Summary Judgment and in Support of Defendants' Motion for Summary Judgment." (Docket Entry 38.) To the extent this filing constitutes a summary judgment motion,[14] the Court should deny it.

According to Defendants, "the August 12, 2009 demand letter . . . is not overshadowing or inconsistent with [Price's] rights [under the FDCPA]." (Docket Entry 38 at 1.) As noted above, see supra, pp. 23-24, the Court, per Judge Schroeder, recently rejected that view of a materially indistinguishable letter. See Garcias-Contreras, No. 1:09CV761, at 20-33. In light of Judge Schroeder's well-reasoned analysis, the Court should deny Defendants' argument for entry of summary judgment in its favor on the portion of Price's overshadowing claim that relates to the letter.

Next, Defendants assert that Price's cease-collection claim "cannot succeed," because Brock & Scott "cause[d] the filing of the

───────────────

[13] Price's observation in her Reply that "Defendants have cited no evidence that they ever did in fact provide [her] with validation of the debt she requested" (Docket Entry 43 at 10) has no bearing on the issue before the Court. "The [FDCPA] does not require that the debt collector actually respond to the request for debt validation. All that is required is that the debt collector cease its efforts to collect the disputed portion of the debt until verification is mailed to the debtor." Judy v. Fidelity Nat'l Collections, No. 1:02CV156 (STAMP), 2003 U.S. Dist. LEXIS 27547, at *13 (N.D.W. Va. Nov. 7, 2003) (unpublished), aff'd, 118 Fed. Appx. 737 (4th Cir. 2004).

[14] Defendants' apparent attempt to move for summary judgment in a brief that also responded to Price's summary judgment motion contravenes the Court's Local Rules. See M.D.N.C. R. 7.3(a) and (j).

complaint by sending the same in the outgoing mail . . . at the very latest, on the same day that [Price's] demand letter was received . . . ." (Docket Entry 38 at 7.) As previously discussed, see supra, pp. 27-29, the evidence cited by Defendants suffices to defeat Price's Motion for Summary Judgment on her cease-collection claim; however, because Defendants's position depends on an inference that Brock & Scott handled the filing of the state collection suit against Price as it "typically" handled such matters, the record does not entitle Defendants to summary judgment, but instead requires a determination by a fact-finder.[15]

Accordingly, the Court should deny Defendants' Motion for Summary Judgment (Docket Entry 33).

### F.  Consent Motion to Stay Mediation

The parties have requested an order staying mediation until after the disposition of Price's Motion for Summary Judgment and/or Defendants' Motion to Dismiss. (Docket Entry 41 at 1.) The Court denies that motion as moot. The parties should proceed with the required mediation of this case immediately.

## III.  CONCLUSION

Good cause exists to permit Price to file a Second Amended Complaint. Moreover, Price is entitled to judgment as a matter of law against Brock & Scott (but not Channel) on her claim for overshadowing arising from the language of Brock & Scott's letter

---

[15] In other words, the applicable legal standard required the Court to draw this permissible inference in Defendants' favor in connection with Price's Motion for Summary Judgment, but prohibited the Court from drawing such inferences in evaluating Defendants' Motion for Summary Judgment.

dated August 12, 2009. A material factual dispute, however, remains as to Price's cease-collection claim.

**IT IS THEREFORE ORDERED** that Price's Motion for Leave to File Second Amended Complaint (Docket Entry 32) is **GRANTED**. Price shall file her Second Amended Complaint in substantially the same form as her proposal (Docket Entry 32-1) on or before April 11, 2011.

**IT IS FURTHER ORDERED** that the parties' Consent Motion to Stay Mediation (Docket Entry 41) is **DENIED** as moot. The parties shall conduct the required mediation on or before June 6, 2011.

**IT IS RECOMMENDED** that Defendants' Joint Motion to Dismiss and Answer (Docket Entry 9) be **GRANTED** as to the portion of Price's overshadowing claim that concerns the filing of the state collection lawsuit and otherwise be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Price's Motion for Judgment on the Pleadings (Docket Entry 16) be **GRANTED** as to her overshadowing claim against Brock & Scott based on Brock & Scott's letter dated August 12, 2009, and otherwise be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Price's Motion for Summary Judgment (Docket Entry 33) be **GRANTED** as to her overshadowing claim against Brock & Scott based on Brock & Scott's letter dated August 12, 2009, and otherwise be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Defendants' Motion for Summary Judgment (Docket Entry 38) be **DENIED**.

    /s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 6, 2011